# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>EFREN ISAAC SOTELO, an individual; and PHILIP MICHAEL BOUCHARD, an individual,<br><br>Defendants. | Case No. 2:17-cv-02456-KJD-CWH<br><br>**ORDER** |

Before the Court are two pending motions. First is Plaintiff National Casualty Company's Motion for Default Judgment Against Efren Isaac Sotelo (#28). Defendant Philip Bouchard responded (#31), and National Casualty replied (#32). Also before the Court is National Casualty's Motion for Summary Judgment (#44) to which Mr. Bouchard responded (#49), and National Casualty replied (#52). Defendant Efren Sotelo did not respond to either motion.

**I.  Background**

In this duty-to-defend action, Plaintiff National Casualty Company seeks a declaratory judgment that it is under no obligation to provide Defendant Efren Sotelo a defense in a companion state court case arising out of a December 2014 car accident. Mr. Sotelo was driving a truck belonging to his father's business when he collided with Defendant Philip Bouchard causing injury. At the time of the accident, National Casualty was the insurer of the company vehicle. Liability and any damages arising out of the accident will be determined in the corresponding state court case. And so, the sole issue before this Court is whether National Casualty must provide Mr. Sotelo a defense in state court.

Although not directly at issue here, the events underlying the state court action provide context for National Casualty's suit for declaratory relief. On December 12, 2014, Mr. Sotelo and Mr. Bouchard were involved in a traffic accident. At the time of the accident, Mr. Sotelo was driving a pick-up truck owned by his father's company, Cool Air Now. Cool Air Now carried insurance on its company vehicles through National Casualty. The policy extended coverage to the named insureds and anyone else using a "covered 'auto'" with permission. If Mr. Sotelo was a permissive user of the Cool Air Now vehicle at the time of the accident, National Casualty would indemnify him and the business for a policy-covered loss.

The crux of this dispute is whether Mr. Sotelo had permission to use the company vehicle on the day of the accident. In December 2014, Mr. Sotelo was employed as a delivery driver for Cool Air Now. In the weeks leading up to the accident, Mr. Sotelo had access to the truck during work hours, after hours, and he and was free to take the truck home with him. On December 10, 2014—two days before the accident—Cool Air Now purportedly terminated Mr. Sotelo's employment. Mr. Sotelo's termination notice was dated and signed on December 10, 2014. It specified that the termination was involuntary and listed various items of company property that Mr. Sotelo was to surrender. This property included keys, a gas card, his uniforms, and other miscellaneous company property. The form designated December 20, 2014 as Mr. Sotelo's last day of work. After notifying Mr. Sotelo of his termination, his father parked the Cool Air Now truck at his home.

The morning of the accident, Mr. Sotelo's father discovered that the truck was no longer parked at his home and reported it stolen. While he was in the process of reporting the truck stolen, Metro police contacted his wife to inform her that a Cool Air Now vehicle was involved in an accident. Mr. Sotelo's father immediately traveled to the scene of the accident. Upon arrival, he learned that the Cool Air Now vehicle involved in the accident was in fact the truck his son drove for work. At the scene, he informed traffic officers that Mr. Sotelo had stolen the truck. Officers arrested Mr. Sotelo for the theft. He later plead guilty to petit larceny and was sentenced to a five-month suspended sentence.

In July 2016, Mr. Bouchard filed his state court action and alleged that Mr. Sotelo, his father, and Cool Air Now negligently caused his injuries. Discovery has closed in that case, and it is headed to trial. In the interim, National Casualty brought this case arguing that Mr. Sotelo's employment was terminated prior to the December 2014 accident. Because of Mr. Sotelo's termination, National Casualty claims that he was not a permissive user of the Cool Air Now vehicle at the time of the accident and therefore falls outside National Casualty's duty to defend.[1] Mr. Sotelo did not answer National Casualty's complaint for declaratory relief. National Casualty then moved for default judgment against Mr. Sotelo, which Mr. Bouchard opposed. Shortly thereafter, National Casualty moved for summary judgment claiming that Mr. Sotelo was not a permissive user and that it was under no obligation to defend Mr. Sotelo. To date, Mr. Sotelo has not responded to National Casualty's motions, but Mr. Bouchard opposes both motions. The Court turns first to National Casualty's motion for summary judgment.

**II.    Legal Standard**

Declaratory judgment allows the Court to adjudicate a party's rights or obligations before it seeks a coercive remedy. Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996). However, the Declaratory Judgment Act does not expand the Court's jurisdiction. Id.; see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950). Rather, a claim for declaratory relief is subject to the same federal jurisdictional requirements as any other case; it must be "brought by [an] interested party," and it must involve an actual controversy. See 28 U.S.C. § 2201; Moseley, 80 F.3d at 1405. A declaratory judgment action that seeks clarification of an insurer's coverage obligation or duty to defend is ripe for judicial review. See Govt. Emp.s Ins. Co. v. Dizol, 133 F.3d 1120, 1222 n.2 (9th Cir. 1998); AAA Nev. Ins. Co. v. Chau, No. 2:08-cv-00827-RCJ-LRL, 2010 WL 1756986, at *3 (D. Nev. Apr. 30, 2010).

Summary judgment is appropriate where there exists no genuine issue of fact and when the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing the

---

[1] Although National Casualty disputes its duty to defend Mr. Sotelo, it has thus far provided courtesy counsel in the state court case.

absence of material fact. Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to show specific facts demonstrating a genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court makes all justifiable inferences in favor of the nonmoving party. Matsushita, 475 U.S. at 587. However, the nonmoving party may not merely rest on the allegations of her pleadings. Rather, she must produce specific facts—by affidavit or other evidence—showing a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). And summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party. Id. at 248.

### III. Analysis
#### A. There is a Genuine Issue of Material Fact Whether Mr. Sotelo was a Cool Air Now Employee and Permissive Driver at the Time of the Accident

Whether National Casualty owes Mr. Sotelo a duty of defense in his underlying state court case boils down to one question: did Mr. Sotelo have permission to use the Cool Air Now vehicle on the day of the accident? On summary judgment, that question is altered slightly to whether there exists a genuine issue of material fact that Mr. Sotelo had permission to use the Cool Air Now vehicle on the date of the accident. After reviewing the evidence in the light most favorable to the non-moving parties, the Court cannot definitively answer whether National Casualty has a duty to provide Mr. Sotelo a defense without first resolving whether Mr. Sotelo was still employed by Cool Air Now on the date of the accident. Because Mr. Sotelo's actual termination date involves a question of fact, the Court denies summary judgment.

An insurer's dual responsibility to defend and indemnify an insured in the event of a covered loss is implicit in every insurance contract. The duty to defend is broader than its duty to indemnify. United Natl. Ins. Co. v. Frontier Ins. Co., Inc., 99 P.3d 1153, 1158 (Nev. 2004). Underlying this duty is the special relationship between an insurer and its insured. See Ainsworth v. Combined Ins. Co. of Am., 763 P.2d 673, 676 (Nev. 1988). The insurer's duty to defend activates when it discovers facts that give rise to liability under the insurance policy. United Natl. Ins. Co., 99 P.3d at 1158 (citing Gray v. Zurich Ins. Co., 419 P.2d 168, 177 (Cal. 1966) (in banc)). Once attached, the duty to defend continues throughout the litigation. Home Sav. Ass'n v. Aetna Cas. & Surety, 854 P.2d 851, 855 (Nev. 1993).

Any doubt as to the insurer's duty to defend should be resolved in favor of the insured. Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.2d 346, 350 (9th Cir. 1988). This is consistent with the public policy of preventing an insurer from "evading its obligation" to provide a defense for its insured without evaluating the facts of the underlying complaint. United Natl. Ins. Co., 99 P.3d at 1158 (citing Hecla Min. Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1090 (Colo. 1991)). However, the duty to defend is not absolute. Aetna Cas. & Sur. Co., 838 F.2d at 350. The duty only exists when there is "arguable or possible coverage" under the disputed policy. Morton v. Safeco Ins. Co., 905 F.2d 1208, 1212 (9th Cir. 1990).

Here, there is "arguable or possible" coverage under the Nevada Casualty policy because Mr. Sotelo's termination statement suggests that he was still a Cool Air Now employee on the date of the accident. National Casualty argues that it is not required to defend Mr. Sotelo because he is not an "insured." According to the policy, an "insured" is anyone the policy explicitly designated as an insured and anyone using a company vehicle with the insured's permission. National Casualty contends that Mr. Sotelo was terminated on December 10, 2014. His termination, it argues, severed any professional link between Mr. Sotelo and Cool Air Now on that date. And as of December 10, Mr. Sotelo was no longer authorized to use his work truck or any other Cool Air Now vehicle. When he took the truck on the date of the accident, he was guilty of theft, he was a non-permissive user of the vehicle, and he was excluded from the policy. If true, National Casualty is under no obligation to defend Mr. Sotelo.

National Casualty's argument is well supported by the evidence in its motion for summary judgment. It includes a sworn declaration by Mr. Sotelo that he stole the vehicle on the date of the accident. In his declaration, Mr. Sotelo claims that he was terminated on December 10, 2014, that he surrendered the keys to the Cool Air Now vehicle, and that he was no longer authorized to drive the truck. He admits that unbeknownst to his parents he copied the keys to the truck. He used those keys to start the car the morning of the accident and was driving to buy cigarettes when he hit Mr. Bouchard. National Casualty also submits a criminal docket sheet that shows Mr. Sotelo was charged with a misdemeanor violation of NRS § 205.240 (petit larceny)

on the date of the accident.[2] It also shows that he pleaded guilty to petit larceny five days later. Finally, National Casualty provides deposition testimony from Mr. Sotelo and his father. Both men testify that Mr. Sotelo stole the truck and was driving outside the scope of employment when the accident occurred.

Because National Casualty offered evidence to support its motion, the burden shifts to Mr. Bouchard to present evidence of a genuine issue of material fact. Matsushita, 475 U.S. at 587. Mr. Bouchard's evidence shows a genuine issue of fact whether Mr. Sotelo was still employed by Cool Air Now the day of the accident. It also disputes whether his father revoked Mr. Sotelo's access to the vehicle before the accident as he claimed. Mr. Bouchard attached multiple exhibits to his opposition. Of these exhibits, two documents—Mr. Sotelo's termination statement and Mr. Bouchard's deposition testimony—demonstrate a genuine issue of material fact whether Mr. Sotelo was still employed by Cool Air Now on the day of the accident.

If Mr. Sotelo was a Cool Air Now employee on December 12, it is reasonable that he was authorized to drive the company truck that day. Despite National Casualty's contention that Cool Air Now severed all ties with Mr. Sotelo on December 10, 2014, his termination statement designates his last day of work as December 20, 2014—eight days after the accident. The termination statement is a one-page preprinted document with intentionally blank spaces that allow company officials to manually input the details of an employee's termination. At the top of the form, there is a space to input the date and a space to indicate whether the termination is voluntary or involuntary. Beneath that, there is a blank space to write the name of the terminated employee and another space to input the reason for the termination. Then, there is a blank table that allows the supervisor to list any company property that the employee would be required to surrender. At the bottom of the form there are two blank spaces where the employee and supervisor sign and input the date.

---

[2] National Casualty requests that the Court take judicial notice that Mr. Sotelo stole the Cool Air Now vehicle and plead guilty to NRS 205.2715 (unlawful taking of a vehicle). It supports that request with Mr. Sotelo's sworn testimony that he stole the vehicle and a state court docket sheet that purportedly shows Mr. Sotelo's corresponding guilty plea. The supporting docket sheet, however, shows a guilty plea for NRS 205.240 (petit larceny) not NRS 205.2715. Given the discrepancy, the Court refuses to take judicial notice of a violation of NRS 205.2715.

The termination statement lists two seemingly conflicting dates. The form itself is dated "12-10-2014." At the bottom, Mr. Sotelo and his supervisor dated their signatures "12-10-2014." But the acknowledgement section of the form states "I, 12/20/14 Efren Sotelo, do hereby give acknowledgment of termination of employment." It continues, "My last day of work will be 12/20/14." The form lists "employee misconduct" as the reason for termination and finds Mr. Sotelo ineligible for re-hire. It then lists keys, a gas card, uniforms, and "all misc. company propert [sic]" as the property to be collected from Mr. Sotelo followed by checkmarks next to each item of property. The form explicitly designates Mr. Sotelo's last day of employment as December 20, 2014. And both Mr. Sotelo and his supervisor signed the form acknowledging that Mr. Sotelo's last day of work would be ten days after signing. A reasonable jury could conclude that Cool Air Now notified Mr. Sotelo of his termination on December 10 but that his employment did not officially terminate until December 20. If that was the case, Mr. Sotelo would have still been a Cool Air Now employee on the date of the accident and was plausibly authorized to drive the vehicle.

Mr. Bouchard's deposition testimony supports his argument that Mr. Sotelo was still employed by Cool Air Now at the time of the accident. In his deposition, Mr. Bouchard testified that shortly after the accident, he spoke briefly with Mr. Sotelo's father. During that conversation, Mr. Sotelo's father lamented that he had not done more to prevent Mr. Sotelo from driving the company vehicle including taking Mr. Sotelo's keys from him. Mr. Bouchard admitted that Mr. Sotelo's father tried to restrict his son's access to the vehicle. But his testimony suggests that on the date of the accident, Mr. Sotelo still had access to the keys to the vehicle. It also supports Mr. Bouchard's argument that Cool Air Now employed Mr. Sotelo until a later date consistent with Mr. Sotelo's termination statement. Accordingly, Mr. Bouchard has shown evidence of a disputed issue of material fact.

Despite the conflicting termination dates and Mr. Bouchard's deposition testimony, National Casualty argues summary judgment is still appropriate because Mr. Sotelo could have been a non-permissive driver while employed at Cool Air Now. The Court acknowledges that there is evidence to support National Casualty's argument that Mr. Sotelo indeed stole his

father's company truck, was a non-permissive user, and is therefore excluded from the insurance policy. The Court finds only that Mr. Bouchard has met his burden to demonstrate that there exist genuine issues of fact whether Mr. Sotelo was still a Cool Air Now employee and as such was permissive user of the vehicle at the time of the accident. Because a reasonable jury could determine that Mr. Sotelo was a permissive user if he was an employee at the time of the accident, the Court denies summary judgment.[3]

### B. Given these Genuine Issues of Fact, Default Judgment is Inappropriate

National Casualty also moves the Court for entry of default judgment based on Mr. Sotelo's failure to participate in this case in any meaningful way. The federal rules lay out a two-step process for obtaining a default judgment. See Fed. R. Civ. P. 55(b); Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). When a defendant has failed to respond to a complaint or otherwise participate in the suit, the party seeking default must first move for an entry of clerk's default. Eitel, 782 F.2d. at 1471. National Casualty moved for Clerk's Entry of Default (#24) on March 13, 2018 after Mr. Sotelo failed to answer its complaint. The clerk entered default (#25) shortly thereafter.

Once the clerk enters the default, the party seeking judgment must apply to the Court for default judgment. The decision to grant default judgment falls within the Court's discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In considering a motion for default judgment, the Court is mindful that cases "should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Default judgments are punitive in nature. Leavitt v. Siems, 330 P.3d 1, 9 (Nev. 2014). It follows that the Court's "starting point" is the general rule that such judgments are disfavored. Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Eitel lists several factors that inform the Court's decision whether to exercise its discretion to grant a default judgment: (1) the possible prejudice to the plaintiff; (2) the merits of plaintiff's claim and sufficiency of its complaint; (3) the sum of money at stake; (4) the possibility of disputed material facts; (5) the possibility

---

[3] Given that there is a genuine issue of material fact whether Mr. Sotelo was an employee and permissive user of the Cool Air Now vehicle at the time of the accident, the Court need not reach the remaining arguments.

- 8 -

excusable neglect by defendant; and (6) the strong policy favoring decision on the merits. Id. at 1471–72.

After reviewing the Eitel factors, the Court determines that the existing questions of material fact mixed with the strong policy favoring decision on the merits preclude default judgment against Mr. Sotelo. The Court turns first to the factors weighing against default judgment. First is the merits of National Casualty's claim and the sufficiency of its complaint. Once the clerk has entered default, the Court views the complaint's factual allegations as true except for those related to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987). However, when a co-defendant of the non-answering party "call[s] into question the validity of plaintiff's entire cause of action," its defenses inure to the non-answering defendant. Sutherland v. Gross, 772 P.2d 1287, 1291 (Nev. 1989). Here, National Casualty presented one cause of action—a declaration that it is not required to defend Mr. Sotelo in his state court case. Mr. Sotelo's co-defendant, Mr. Bouchard, has produced evidence that Mr. Sotelo was a permissive user of the vehicle on the day of the accident, which calls into question National Casualty's responsibility to provide a defense. Accordingly, this factor weighs against default judgment.

The next Eitel factor that weighs against default judgment is the possibility of issues of material fact in the plaintiff's cause of action. Reservations about the validity of a plaintiff's cause of action weigh against granting default judgment. Eitel, 782 F.2d at 1472 (citing Aldabe, 616 F.2d at 1092–93 and finding that the district court did not abuse its discretion in denying a default judgment when it "could have had serious reservations about the merits of [plaintiff's] substantive claim."). As stated, there is a genuine issue of material fact whether Mr. Sotelo was employed by Cool Air Now on the date of the accident. Although Cool Air Now purportedly notified Mr. Sotelo of his termination before the accident, the termination notice listed his last day of employment eight days after the accident. This evidence suggests that National Casualty may in fact be required to provide Mr. Sotelo a defense under the Cool Air Now insurance policy. Therefore, this factor weighs against default judgment.

The final <u>Eitel</u> factor that weighs against default judgment is the strong public policy in favor of a decision on the merits. Cases should be decided on their merits "whenever possible." <u>Eitel</u>, 782 F.2d at 1472. By definition, a default judgment contravenes this policy. Accordingly, this factor weighs against entering default judgment.

The remaining <u>Eitel</u> factors: prejudice to the plaintiff, amount of money at stake, and lack of excusable neglect favor default judgment. Admittedly, National Casualty may suffer prejudice if it must continue to expend resources in Mr. Sotelo's defense. See <u>Guardian Life Ins. Co. of Am. v. Pundyk</u>, No. 2:16-cv-01196-APG-GWF, 2017 WL 438740 (D. Nev. Feb. 1, 2017). However, National Casualty does not suffer prejudice if it is in fact required to provide a defense for Mr. Sotelo in his underlying state court case. The Court has determined that a reasonable jury could determine that Mr. Sotelo was still employed by Cool Air Now—and a permissive user of the Cool Air Now vehicle—on the date of the accident. As a result, this potential prejudice is not enough to overcome the strong public policy favoring a decision on the merits.

Next, the sum of money at stake slightly favors default. Given that National Casualty's action is one for declaratory relief, monetary damages are not at issue. Accordingly, the lack of money at stake supports default judgment. Also favoring default is that there is no evidence that Mr. Sotelo's failure to respond was due to excusable neglect. In fact, National Casualty has attempted to serve Mr. Sotelo with a summons and complaint multiple times. It even requested that Mr. Sotelo's courtesy counsel accept service on his behalf. It declined service, however, and stated that the scope of its representation did not allow such acceptance. National Casualty then sought leave to serve Mr. Sotelo by publication. National Casualty has attempted to involve Mr. Sotelo in this suit. And the Court sees no evidence that his failure to participate is due to excusable neglect. Therefore, this factor favors entry of default judgment.

In sum, the <u>Eitel</u> factors do not overwhelmingly support or prevent default judgment. As a result, they are insufficient to overcome the strong policy of deciding issues on their merit. Accordingly, the Court denies entry of default judgment.

//

//

**IV.     Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that National Casualty Company's Motion for Summary Judgment (#44) is **DENIED**;

IT IS FURTHER ORDERED that National Casualty Company's Motion for Default Judgment (#28) is **DENIED**.

Dated this 2nd day of November, 2018.

_____
Kent J. Dawson
United States District Judge