Nathaniel S.G. Braun, NV Bar No. 15707
  *nbraun@sinclairbraun.com*
Kevin S. Sinclair, NV Bar No. 12277
  *ksinclair@sinclairbraun.com*
SINCLAIR BRAUN LLP
16501 Ventura Blvd, Suite 400
Encino, California 91436
Telephone:  (213) 429-6100
Facsimile:  (213) 429-6101

Attorneys for Plaintiff
NATIONAL CASUALTY COMPANY

DESIGNATED LOCAL COUNSEL FOR SERVICE
PER L.R. IA 11-1(b)

Gary L. Compton, State Bar No. 1652
2950 E. Flamingo Road, Suite L
Las Vegas, Nevada 89121

# UNITED STATES DISTRICT COURT

# NEVADA

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, | Case No.: 2:17-cv-2456-KJD-DJA |
| Plaintiff, | **JOINT PRETRIAL ORDER** |
| vs. | [Honorable Kent J. Dawson] |
| EFREN SOTELO et al., | |
| Defendants. | |

Following pretrial proceedings in this cause,

**IT IS ORDERED:**

**I.      STATEMENTS OF THE CASE**

Efren Sotelo was defaulted and has not appeared, and therefore makes no statement.

**A.      NATIONAL CASUALTY COMPANY'S STATEMENT OF THE CASE**

The only issue remaining in this action is whether National Casualty Company (NCC) owes a duty to pay the judgment Philip Bouchard obtained against Efren Sotelo (Efren) in the Underlying Action, *Bouchard v. Sotelo*, Eighth Judicial District Court case no. A-16-740711-C, presently on appeal on post-judgment issues. NCC does not, because Efren was not NCC's insured.

Efren stole his former employer's truck and while driving the stolen truck he rear-ended Bouchard's vehicle. The stolen truck belonged to Now Services of Nevada, LLC dba Cool Air Now ("Cool Air Now"); the named insured under the subject insurance policy issued by NCC.

Efren was not an insured under the policy. Efren would only qualify as an insured under the policy if he was using the truck with the permission of Cool Air Now. He was not – he stole the truck.

All the evidence supports the same. Juan Sotelo, ("Juan") owner of Cool Air Now, reported the truck as stolen. When the police arrived at the scene of the accident, Efren was arrested and criminally charged for theft of the vehicle. Efren pled guilty to a lesser charge, petit larceny, and was sentenced. Efren also swore in a signed affidavit that he stole the truck and did not have permission to use it.

**B.     PHILIP BOUCHARD'S STATEMENT OF THE CASE**

Bouchard disagrees with NCC's statement of the case. Efren Sotelo was given permission to drive the truck as part of his work vehicle. His employee file shows he was still an employee on the date of the incident. At the scene, Juan Sotelo told Philip Bouchard that he should have taken his son's keys away. The truck was not reported stolen until after the incident. Efren Sotelo was not an excluded driver on the insurance policy until after the incident.

Bouchard's Complaint alleged Efren was driving the vehicle with permission, triggering the duty to defend. The default deemed all allegations as true. Once Efren became liable for the judgment, NCC owed indemnity.

**II.     <u>JURISDICTION</u>**

Plaintiff alleges this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and § 2201. NCC is a Wisconsin Corporation with its principal place of business in Scottsdale, Arizona. Bouchard and Sotelo are both citizens of Nevada. There is an actual, justiciable controversy, and the amount in controversy exceeds the minimum threshold in 28 U.S.C. § 1332.

Bouchard believes this Court should exercise its discretion to dismiss the matter, as previously argued.



**JOINT PRETRIAL ORDER**

III.   **STIPULATED FACTS**

The parties have stipulated that:

1) On July 27, 2016, Philip Michael Bouchard ("Bouchard") filed a complaint against Efren Isaac Sotelo ("Efren"), Juan Sotelo ("Juan"), and Now Services of Nevada, LLC dba Cool Air Now ("Now Services") Nevada State Court Case No. A-16-740711-C ("State Action").

2) The basis for the State Action was that Efren negligently caused an accident in which Bouchard was injured.

3) Efren was driving a pick-up truck owned by Now Services.

4) In the relevant time period, National Casualty Insurance ("National") issued a policy of commercial automobile insurance naming Now Services as the named insured.

5) The Now Services truck qualified as a covered auto under the NCC policy.

6) Efren was not a named insured on the NCC policy.

IV.   **CONTESTED ISSUES OF FACT**

**A.     NCC'S ISSUES OF FACT**

NCC submits there is only one issue of fact: whether Efren Sotelo had permission to use the truck at the time of the accident.

**B.     BOUCHARD'S ISSUES OF FACT**

Bouchard alleges:

1) The truck in question was Efren Sotelo's work truck that he was free to take home.

2) Efren was living at the same house as his parents on the day of the incident.

3) Mr. Sotelo was aware that Efren was using heroin prior to the date of the incident.

4) Mr. Sotelo was aware that Efren had embezzled/stolen money prior to the date of the incident.

5) Mr. Sotelo was aware that Efren had been an at fault driver in at least two prior accidents before the date of this incident.

6) The car was left at Efren and Mr. Sotelo's house the morning of the incident.

**JOINT PRETRIAL ORDER**



7) Efren had been previously given permission to use the car. The dispute in this case involves permission on the date of the incident.

8) Efren was not an excluded driver under the policy at the time of the incident with Bouchard.

9) Ms. Sotelo testified Cool Air Now is supposed to notify the insurance company regarding any drivers of the vehicle and when he has revoked permission from a driver.

10) Efren was not excluded from the policy until approximately a month after the accident, which is important to the issue of permission in this case.

11) Bouchard's Complaint alleged:

> 12. Upon information and belief, SOTELO was employed by COOL AIR NOW and, at all relevant times, SOTELO was operating the Pick- Up Truck with the express or implied permission of his employer.

12) Additionally, the Complaint contains additional allegations that Efren had permission to use the truck:

> 30. COOL AIR NOW, J. SOTELO and DOE I breached that duty by knowing entrusting their dangerous vehicle to another whom they knew or should have known was likely to use it in a manner involving unreasonable risk of harm to others…

> 41. COOL AIR NOW, J. SOTELO and DOE I breached that duty by failing to properly supervise SOTELO by allowing him to operate the vehicle and do so in the manner described above.

*Id.*



13) On September 9, 2016, Bouchard filed a "Three Day Notice of Intent to Default."

14) National's counsel was served with this notice of intent to Default.

15) The insurer refused to initially defend Efren Sotelo, resulting in a default.

16) National eventually attempted to defend Efren Sotelo, but the district court denied Efren's attempt to set aside the default.

17) In the state court case, there was also evidence supporting the allegations against Efren Sotelo:

    a.  Mr. Bouchard testified that Juan Sotelo stated at the scene that he should have taken the keys from Efren Sotelo.

    b.  The termination paperwork for Efren noted that his last day would be December 20, 2014.

18) On September 8, 2017, National filed the current action. (ECF 1) seeking declaratory relief on two issues: (1) whether it owed a duty to defend Efren Sotelo; and (2) whether it owed a duty to indemnify Efren Sotelo.

19) The State Action against Juan and Cool Air was dismissed before trial.

20) On September 26, 2019, after a multi-day default prove-up hearing on the amount of damages, where Efren Sotelo's counsel was permitted to participate, the State Court issued an order granting total monetary judgment against Efren in the amount of $219,193.02.

21) The Order specifically deemed all allegations in the Complaint as true.

22) The deadline to appeal the Default Judgment has passed pursuant to Nevada Rules of Appellate Procedure 4(a)(1).



23) The Court subsequently granted Philip Bouchard's request for attorneys' fees, costs, and interest, bringing the total judgment to $385,108.17, plus accruing post-judgment interest.

24) On April 8, 2020, National filed an appeal only as to the Order granting attorney's fees, costs, and interest.

25) Juan Sotelo gave his insurance company different information than he has given under oath including:

    a.   where the keys were before the keys were allegedly stolen;

        i.  Juan told his insurance company the keys were on a board at work. Juan testified in deposition he had his keys on his person.

    b.   where the car was before it was allegedly stolen;

        i.  Juan told his insurance company the car was at the office.  Juan testified in deposition the car was taken from his home where Efren also lived; and

    c.   the date Efren Sotelo was allegedly fired

        i.  Juan told the insurance company Efren was fired December 8, 2014.  Juan testified he was fired December 10, 2014.

26) Juan was also under threat of a 10% premium surcharge on a $36,240.00 premium for allowing an unreported driver to take the vehicle.

27) At the scene, Juan Sotelo told Bouchard he should have taken Efren's keys away.

    **1.**        **<u>Whether the Sotelo's Testimony is truthful or should be disregarded</u>**

The Sotelo's are not to be believed.

Efren admitted he used the company card to buy gift cards to acquire heroin:

> Q: Now your dad believes the reason you used the company card to buy gift cards was to buy drugs. Are you aware of that?
> A: Yeah, I`m aware of that.
> Q: Is that true?
> A: I guess you could say that.
> Q: Yes?
> A: Yes.



Additionally, Mr. Sotelo knew his son was a heroin addict:

> Q: So my question is, prior to the day of the accident, did they try to do anything to help you with the fact that they thought you were on drugs?
> A: I mean, yeah.· They`ve tried.
> Q: Like what?
> A: Clinics.
> Q: What kind of clinics?
> A:Methadone clinics
> Q: This was before the accident?
> A: Yeah.
> Q: When approximately?
> A: I couldn`t tell you the dates. I couldn`t tell you--
> Q: I understand.· Approximately, was it the same year?
> A: No, I think it was the year before.
> Q: Just one time?
> A: No. Three or twice, I think. Might have been three times.
> Q: Before the accident?
> A: Mm-hmm.
> Q: And all three were methadone clinics?
> A: Yeah.
> Q: Methadone is specifically for heroin users, correct?
> A: Yeah.
> Q: So, no one`s there because they`re addicted to marijuana, correct?
> A: No.
> Q: Okay. No one`s there because they`re alcoholics, correct?
> A: No.
> Q: It`s specifically heroin?
> A: Yeah. Opiate use.
> Q: Okay. Pills or heroin?
> A: Yeah.

In fact, Mr. Sotelo helped pay for his rehab:

> Q: When you went to rehab the three times out here in Vegas, did your dad pay for those?
> A: The clinics, I paid for some of them.
> Q: Did your dad pay for some of them?
> A: He paid. I mean, there was times...because it was weekly, so we have weeks where I would pay, If I didn`t have money, I would ask them If they had it, they would help me out.
> Q: So at least part of it, he paid for you?
> A: Yeah.

Mr. Sotelo was also aware of several of Efren's arrests:

> Q: Is your dad aware... I want to talk about on the date of the accident. Was your dad aware of the burglary charges against you?

**JOINT PRETRIAL ORDER**



A: From before?

Q: On the date of the accident, did your dad know that you had the burglary charges from 2008?

A: Well, yeah. He would know.

Q: What about the pills charge?

A: Well, yeah.

Q: The firearms charges?

A: Yes.

Q: In some of these police reports, your dad said that he believed you were on drugs.

A: Mm-hmm.

Q:  You said I was, I was doing heroin.

A: Yeah, I was that time.


Yet, Mr. Sotelo denied any knowledge of heroin use:

Q:     And it talks about drug history.  On the day of the accident, were you aware that Efren had some type of drug history?

A:     I was not aware.  Well, I was aware of history, but not here.

Q:     What history are you referring to?

A:     I mean, when he was a teenager, he hung around with the wrong crowd, and I guess they were doing – smoking marijuana.

Q:     Any other drugs?

A:     Not that I know of.

Q:     Just marijuana?

A:     That's what I know…

In fact, one of the first answers out of Efren's mouth was untrue – for seemingly no reason other than to hide the truth:

Q: Okay, how did you get here today?

A: An Uber.

Q: You got an Uber?

A: Mm-hmm.

Q: I saw you get out of a truck that said Cool Air Now in the parking lot.

A: Mm-hmm.

Q: That was an Uber?

A: Oh no that was my mom, I`m leaving in an Uber.

Similarly, Efren Sotelo provided a false statement to the state court regarding something more substantive in his affidavit when he tried to have his default set aside. In the Affidavit, he stated he was visiting his great-grandmother in Mexico.  The truth was that he was in rehab. Even in his deposition, he did not admit the truth until presented with the evidence:

Q: Were you in rehab when you were there?

A: No.



Q: Are you aware that your dad told Ms. Stephenson you were in rehab when you were in Tijuana?
A: No.  I was not aware…
Q: If your dad said you were in rehab, is that not true?...
A: I don't get what's going on her.
Q: You were in rehab, correct?
A.  Okay. For a period, I was there in rehab for a while.
Q: In Tijuana?
A: MM-hmm.
Q: Yes?
A: Yes.

        2.     **Whether NCC has met its burden of proving no coverage**

**V.**    **ISSUES OF LAW**

The following issues of law remain in dispute for trial:

**A.**    **NCC'S ISSUES OF LAW**

1)  Which party has the burden of proof to prove that Efren is an insured under the NCC Policy?

    a.  NCC submits that the party seeking coverage – here, Bouchard – has the burden of proving that Efren qualified as an insured.

        i.  *Liberty Ins. Corp. v. Brodeur*, 462 F. Supp. 3d 1092, 1098 (D. Nev. 2020) ("The Insured bears the burden of proving that the claim for which coverage is sought falls within the policy's coverage. *Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 339 P.2d 767, 768 (1959)"); *see also Assurance Co. of Am. v. Ironshore Specialty Ins. Co.*, No. 215CV00460JADPAL, 2017 WL 3666298, at *2 (D. Nev. Aug. 24, 2017) (same).

        ii.  "[T]he Ninth Circuit has further noted that assigning the burden to the insured is consistent with the general principal that the insured has the burden to prove that a covered claim falls within the scope of basic coverage. *Id.* Nevada, of course, places the burden on the insured to do

just that." *Ace Prop. & Cas. Ins. Co. v. Vegas VP, LP*, No.
2:07CV00421BESPAL, 2008 WL 2001760, at *4 (D. Nev. May 7,
2008), aff'd sub nom. Ace Prop. And Cas. Ins. Co. v. Vegas VP, LP,
349 F. App'x 232 (9th Cir. 2009); *citing Nat'l Auto & Cas. Ins. Co. v.
Havas*, 75 Nev. 301, 303, 339 P.2d 767, 768 (1959).

2) Has Bouchard, the party seeking coverage proven that Efren Sotelo qualified as an
insured under the NCC Policy?

a. NCC submits that Bouchard cannot meet his burden to prove that Efren
qualified as an insured.

b. Pursuant to the terms of the policy, Efren could only qualify as an insured if he
was a permissive user of the subject truck.

c. Efren has not sought coverage; and he admitted that he did not have permission
to use the truck and stole it.

**B.    BOUCHARD'S ISSUES OF LAW**

**1.    WHO HAS THE BURDEN OF PROOF**

Bouchard asserts that NCC bears the burden of proof. All of the cases cited by NCC

involve summary judgment motion, not trial, and address the duty to present issues of fact to

defeat summary judgment.  There appears to be no dispute the allegations in the underlying

complaint, if true, trigger coverage:

> In resolving the question of whether a duty to defend exists—
> tendered in the context of a summary adjudication/summary
> judgment motion in a declaratory relief action—the insurer has a
> higher burden than the insured. "[T]he insured need only show that
> the underlying claim may fall within policy coverage; the insurer
> must prove it cannot "; the insurer, in other words, must present
> undisputed facts that eliminate any possibility of coverage.

*Am. States Ins. Co. v. Progressive Cas. Ins. Co*., 102 Cal. Rptr. 3d 591, 598 (2009)

> The burden is on the insurer to show that the allegations in the
> pleadings fall clearly outside the scope of coverage; any ambiguity
> in the policy is construed in favor of coverage; and if any part of the
> pleadings "potentially or arguably" falls within the policy's
> coverage, then the insurer must either seek a declaratory judgment



> on its duty to defend or undertake the defense while reserving its
> right to later contest coverage based on facts developed at the trial
> on the merits.

*Scherschligt v. Empire Fire & Marine Ins. Co*., 662 F.2d 470, 472 (8th Cir. 1981)

    The duty to defend "arises if facts in a lawsuit are alleged which if proved would give rise to the duty to indemnify, which then the insurer must defend." (emphasis in original)).  *Century Surety Company v. Andrew*, 432 P.3d 180, 184 (Nev. 2018).

    Thus, once the duty to defend is established, the insurer bears the burden to defeat the duty to indemnify:

"[I]n a declaratory judgment action, the burden is on the insurance company to prove lack of coverage. *Houston Specialty Ins. Co. v. Rodriguez Corp*., 3:18-CV-1886-YY, 2020 WL 362641, at *1 (D. Or. Jan. 22, 2020).

> In a declaratory relief action to determine the insurer's obligations
> under the policy, the burden is on the insured initially to prove an
> event is a claim within the scope of the basic coverage. The burden
> then shifts to the insurer to prove the claim falls within an exclusion.

*Merced Mut. Ins. Co. v. Mendez*, 261 Cal. Rptr. 273, 277 (Ct. App. 1989)

> It is well established that when an insured has proved a loss
> apparently within the terms of the policy, the burden is on the
> insurer to show that such loss was produced by a cause which is
> excepted from the coverage.

*Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303, 339 P.2d 767, 768 (1959).

    **2.**    <u>**Whether the Duty to Defend Existed**</u>

    It is a well-established principle of Nevada law that "[t]he duty to defend is broader than the duty to indemnify" and that the duty to defend "exists when there is arguable or possible coverage." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 99 P.3d 1153, 1158 (Nev. 2004).



---

**JOINT PRETRIAL ORDER**

"[T]he duty to defend arises when there is a potential for coverage based on the allegations in a complaint." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 681, 99 P.3d 1153, 1155 (2004)

"[A]n insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011); *Kazi v. State Farm Fire and Cas. Co.*, 24 Ca1.4th 871, 879, 103 Cal. Rptr. 2d 1, 15 P.3d 223 (2001) ("[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop.").

Additionally, "an insurer owes a duty to defend its insured 'whenever it ascertains facts which give rise to the potential of liability under the policy.'" *N. Ins. Co. of New York v. Nat'l Fire & Marine Ins. Co*., 953 F. Supp. 2d 1128, 1134 (D. Nev. 2013) (quoting *United Nat'l Ins. Co*., 99 P.3d at 1158) (emphasis added).

The allegations in the pending State of Nevada District Court Case, the Complaint clearly trigger coverage under the policy.  Specifically, the Complaint alleges that Efren Sotelo:

> 12.    Upon information and belief, SOTELO was employed by COOL AIR NOW and, at all relevant times, SOTELO was operating the Pick-Up Truck with the express or implied permission of his employer.

Additionally, the Complaint contains additional allegations that Efren had permission to use the truck:

> 30.    COOL AIR NOW, J. SOTELO and DOE I breached that duty by knowing entrusting their dangerous vehicle to another whom they knew or should have known was likely to use it in a manner involving unreasonable risk of harm to others.

> 41.   COOL AIR NOW, J. SOTELO and DOE I breached that duty by failing to properly supervise SOTELO by allowing him to operate the vehicle and do so in the manner described above.

*Id.*

SINCLAIR
BRAUN LLP

As a result of the allegations in the Complaint, the insurance company owes a duty to Defend Efren Sotelo under Nevada law.

### 3. <u>Whether Nevada's Absolute Liability Statute Mandates at least $15,000 in Indemnity</u>

"<u>In Nevada, all motor vehicles must be insured for at least $15,000 bodily injury or death liability per incident, and $10,000 in property damage liability.</u> NRS 485.185; NRS 485.3091(1)(b)(1), (1)(b)(3). NRS 485.3091 also contains an absolute-liability provision." *Torres v. Nev. Direct Ins. Co.*, 131 Nev. Adv. Op. 54, 353 P.3d 1203, 1207 (2015). As a result, there are no circumstances where an insurer can completely disclaim coverage for an automobile accident. It <u>must</u> provide $15,000 in coverage in all circumstances.

In fact, the Nevada Supreme Court has consistently refused to allow an insurance company to escape paying at least statutory minimums on a claim. In *Federated American Ins. Co.*, the Nevada Supreme Court required statutory minimums on a policy where the driver had been specifically excluded under the policy, noting:

> We have previously held that this provision invalidates certain exclusions for claims less than the statutory minimum amount. For instance, in Baker v. Criterion Ins. Co., 107 Nev. 25, 805 P.2d 599 (1991) we noted that, under NRS 485.3091(1), a household exclusion clause is valid only for claims in excess of the $15,000/$30,000 minimum liability insurance required by statute. See also, Estate of Neal v. Farmers Ins. Exchange, 93 Nev. 348, 566 P.2d 81 (1977) (concluding that a household exclusion clause for less than the statutory minimum amount is void). We not hold that … an insurance company must provide minimum coverage to all persons… regardless of whether the permissive drive has been explicitly excluded from coverage."

*Federated Am. Ins. Co. v. Granillo*, 108 Nev. 560, 562, 835 P.2d 803, 804 (1992).

In this case, Efren was not excluded as a permissive driver under the policy until after the incident, on January 8, 2015. **Even if he was excluded prior to the accident, Nevada law would require the insurer to at least provide minimum coverage.** Therefore, even if this Court finds Efren stole the vehicle, Nevada requires the insurance company to provide at least $15,000 in liability coverage.

SINCLAIR
BRAUN LLP

1

### 4.    Whether the Initial Permission Rule Requires Coverage

2
3
4
5
6
7

In Nevada, "[o]nce an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is irrelevant. Making coverage turn on the scope of permission given in the first instance renders coverage uncertain in many cases. Such practice fosters litigation regarding the existence or extent of any possible deviation, and it obstructs achievement of the policy declared by the Legislature." *U. S. Fid. & Guar. Co. v. Fisher*, 88 Nev. 155, 160, 494 P.2d 549, 552 (1972).

8
9
10
11
12
13
14

*U.S. Fidelity & Guaranty Co*. involved a substantially similar permissive use clause in the insurance agreement.  The owner of the vehicle asked his neighbor to take him to the airport and then park the vehicle in the owner's driveway.  The Court noted that "on several prior occasions given David permission to use the car in going to and from his place of employment and also on shopping tours." *Id.* at 550 (1972).   As a result of the initial permission, the Court held that the neighbor's use of the car after that was a permissive use under the policy, requiring full coverage under the policy.  *Id*. at 552.

15
16
17

Here, the initial permission rule mandates coverage.  In fact, the truck in question was Efren Sotelo's work truck that he was free to take home.  Efren was living at the same house as his parents on the day of the incident.  The car was left at Efren and Mr. Sotelo's house the morning of the incident.  Mr. Sotelo did not report the car stolen until after the accident.

18
19

The termination paperwork for Efren noted that his last day would be December 20, 2014, not December 10, 2014.

20
21
22

Mr. Sotelo told Plaintiff at the scene that he "should have taken his keys away." *See* **Exhibit "B"** at pp. 82:6-83:21. If that statement is true, then the initial permission rule would require the insurance company to provide coverage for the full extent of the policy.

23
24
25
26

Efren Sotelo testified he made a spare key while he was employed in case he got locked out of his truck. Ms. Sotelo testified that employees routinely and permissively made these spare keys.  Even though employees made these spare keys, the owner of the truck never asked Efren Sotelo for the extra key. As a result, the initial permission rule requires full coverage in this case.

27
28

14

**JOINT PRETRIAL ORDER**

### 5.   <u>Whether NCC Must Indemnify Due to Efren's Default</u>

"The duty to indemnify arises when an insured 'becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.'"   *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc*., 120 Nev. 678, 686, 99 P.3d 1153, 1157 (2004).  The insurer's only objection to indemnification is that Efren Sotelo did not have permission to take the car, contrary to the allegations in the complaint.  Therefore, there is no dispute that, if the allegations in the state court complaint are accepted by the trier of fact in the state court action, then Nautilus owes a duty to indemnify.

Under *United Nat'l Ins. Co.,* this Court's analysis is not whether National is bound by the doctrine of *res judicata*.  Rather, the analysis is simply whether the Efren Sotelo as become obligated to pay.

Here, Efren Sotelo became "legally obligated to pay damages in the underlying action that gives rise to a claim under the policy" when the default judgment became final, which was 30 days after the notice of entry of order on March 9, 2020.

### 6.   <u>Whether NCC's Breach of Duty to Defend Renders it Liable for Consequential Damages i.e. The Judgment and If the Declaratory Relief Action Seeks A Response to this Question</u>

NCC's complaint is unclear whether the declaratory relief would require the Court to address this issue. NCC's complaint sought a declaration it owed no indemnity. Such a declaration should have no affect on breach of contract damages for the failure to defend. However, to the extent the Court believes such issues are raised in this action, the issue of law is well-settled in Bouchard's favor.

In the recent case *Century Surety Company v. Andrew*, the Nevada Supreme Court examined the damages that an insured is entitled to for breach of the duty to defend. 432 P.3d 180,

**JOINT PRETRIAL ORDER**

186 (Nev. 2018). The *Andrew* Court determined that an insured is entitled to "consequential damages resulting from the insurer's breach of its contractual duty to defend." *Id.*

"The objective is to have the insurer 'pay damages necessary to put the insured in the same position he would have been in had the insurance company fulfilled the insurance contract." *Id.* at 185 (quoting *Burgraff v. Menard, Inc.* 875 N.W.2d 596, 608 (Wis. 2016)). The Court further explained: "An insurer that refuses to tender a defense for 'its insured takes the risk not only that it may eventually be forced to pay the insured's legal expenses but also that it may end up having to pay for the loss that it did not insure against.'… Accordingly, ***the insurer refuses to defend at its own peril***." *Id.* (emphasis added) (quoting *Hamlin Inc. v. Hartford Acc. And Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996)).

## VI.   <u>WITNESSES</u>

### A.   NCC

NCC does not believe there is a need for live testimony. NCC intends to offer the sworn affidavit of party-opponent Efren Sotelo, as well as Deposition testimony of Efren Sotelo taken in the Underlying Action. NCC also intends to offer certain exhibits and criminal records into evidence, which NCC believes should be admitted by stipulation. If Bouchard disputes their authenticity, NCC may need to authenticate them via testimony or, where appropriate, judicial notice.

### B.   BOUCHARD

1.   Philip Michael Bouchard

2.   Efren Sotelo

3.   Juan Sotelo

4.   Delia Sotelo

5.   Tara Lindsay-Smith

6.   Lisa McClelland

7.   Jonathan Martineau



8.   Philip Crawford

9.   Erin Smith

10.  Connie Cheng

11.  Rachel Scoville

12.  Brenda Green

13.  Joy Spearman Brown

14.  Audrey Jescheling

15.  Christene Sims

16.  Mathew Willis

## VII.   **EXHIBITS**

### A.   **NCC'S EXHIBITS**

1)  The NCC Policy

    a.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

2)  Efren Sotelo's August 17, 2017 Sworn Affidavit

    b.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence and the Federal Rules of Civil Procedure, including but not limited to, the failure to disclose the document.

3)  The Police Report for the Subject Accident

    c.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence the Federal Rules of Civil Procedure, including but not limited to, the failure to disclose the document.

4)  The Criminal Complaint against Efren Sotelo in *State v. Sotelo*, Las Vegas Justice Court Case No. 14F19296X (the "Criminal Action").



d.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence the Federal Rules of Civil Procedure, including but not limited to, the failure to disclose the document.

5)  The record of the proceedings of the Criminal Action.

e.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence the Federal Rules of Civil Procedure, including but not limited to, the failure to disclose the document.

6)  The Disposition Notice and Judgment against Efren in the Criminal Action.

f.  Bouchard objects to authenticity, foundation, relevance, materiality, hearsay, as well as for any other reason set forth within the Federal Rules of Evidence the Federal Rules of Civil Procedure, including but not limited to, the failure to disclose the document.

**B.      BOUCHARD'S EXHIBITS**

**1.**     Complaint

**a.**     NCC objects to this document as it is irrelevant.

**2.**     Three Day Notice

**a.**     NCC objects to this document as it is irrelevant.

**3.**     Default

**a.**     NCC objects to this document as it is irrelevant.

**4.**     Order Denying Motion to Set Aside Default Judgment

**a.**     NCC objects to this document as it is irrelevant.



**5.**    Deposition Testimony of Philip Bouchard

      **a.**    NCC objects to this document as it is irrelevant, and because it constitutes inadmissible hearsay.

**6.**    Efren Sotelo's Employee File

      **a.**    NCC objects to this document as it is irrelevant and constitutes inadmissible hearsay.

**7.**    Dismissal of Juan Sotelo and Cool Air Now.

**8.**    Default Judgment

      **a.**    NCC objects to this document as it is irrelevant.

**9.**    Order Gratining Attorneys' fees, costs and interest

      **a.**    NCC objects to this document as it is irrelevant.

**10.**    Appeal

      **a.**    NCC objects to this document as it is irrelevant.

**11.**    Deposition of Philip Michael Bouchard.

**12.**    Deposition of Efren Sotelo.

**13.**    Deposition of Juan Sotelo.

**14.**    Deposition of Delia Sotelo.

**15.**    All Pleadings in the Underlying Claim.

      **b.**    NCC objects to this designation as it is overbroad.

**16.**    All Written Discovery Exchanged in the Underlying Claim.

      **a.**    NCC objects to this designation as it is overbroad.

**17.**    All correspondence between the parties in the Underlying Claim.

      **a.**    NCC objects to this designation as it is overbroad.



**JOINT PRETRIAL ORDER**

**18.**   National Casualty Insurance's Entire Claims File.

      **a.**   NCC objects to this designation as it is overbroad, irrelevant, and contains privileged information, which was the subject of discovery motions that Bouchard already lost.

## VIII.   TRIAL DATE

The Court has not yet set a date for trial in this action. Counsel for Bouchard has advised that he has trials scheduled throughout the summer and fall of 2021 as a result of the courts being closed in 2020 due to COVID-19.  Specifically, Plaintiff's counsel has the following matters currently scheduled for trial stacks (dates are not firm, but are set on 5 week stacks), short trial or arbitration hearings beginning in June 2021 through the end of the year:

| | |
|---|---|
| Mazza, Robert v. Raudel, Banuelos Christian, et al. Case No.: A-17-760368-C | 6/9/2021-7/17/2021 |
| Delapa, Teri v. Diaz, Aura Case No.: A-19-802975-C **SHORT TRIAL** | 6/11/2021 |
| Whittemore, Samantha v. Chirdo, Vincent, et al. Case No.: A-20-820380-C **ARBITRATION** | 7/14/2021 |
| Scharringhausen, Kevin v. Venture Point, LLC Case No.: A-18-777160-C | 8/2/2021-9/6/2021 |
| Jametsky, Walter v. Gabriel Soto Garcia, et al. Case No.: A-20-813443-C **ARBITRATION** | 8/4/2021 |
| Drissi, Tony v. Shrader, James Case No.: A-18-776904-C | 8/9/2021-10/8/2021 |
| Mirich, Heather v. Costco Wholesale Corporation Case No.: A-20-814500-C **ARBITRATION** | 9/3/2021 |
| Silva, Rosa v. Gustafson, Andrew Paul, et al. Case No.: A-19-804862-C **SHORT TRIAL** | 9/10/2021 |
| Hutton, Kiva v. Geico General Insurance Case No.: A-18-785834-C | 10/4/2021-11/5/2021 |

**JOINT PRETRIAL ORDER**

| Chumley, Felicia v. A One Carpet Cleaning Las Vegas, et al. Case No.: A-19-793339-C | 10/18/2021-11/22/2021 |
|---|---|
| Egnor, Anitra v. Circle K Stores, Inc. Case No.: A-18-786255-C | 10/25/2021-11/29/2021 |

As a result, Plaintiff requests a trial date the week of January 10, 2022. Counsel for NCC is available that week and the parties agree to that date.

NCC does not request a jury trial and believes that, given the predominantly legal issues, the matter is better suited for a Court trial. Bouchard has not made a jury demand.

## IX.   TRIAL ESTIMATE

NCC believes that the trial should take 1-2 days.

Bouchard believes 2 days is likely sufficient but perhaps a third day would be necessary.

## X.   SCHEDULING

1) The case is set for Court trial on the stacked calendar on <u>January 10, 2022</u> at <u>9:00 a.m.</u>. Calendar call shall be held on <u>December 28, 2021</u> at <u>9:00 a.m.</u>

2) Each party's trial brief shall be submitted by no later than <u>December 29, 2021</u>.

3) Proposed findings of fact and conclusions of law shall be filed no later than <u>December 29, 2021.</u>

The foregoing is approved by the parties to the action as signed by their counsel of record, below.

Dated:  May 26, 2021                    SINCLAIR BRAUN LLP


                                        By:   <u>/s/-Nathaniel S.G. Braun</u>
                                              NATHANIEL S.G. BRAUN
                                              Attorneys for Plaintiff
                                              NATIONAL CASUALTY COMPANY

Dated:  May 26, 2021                    THE SCHNITZER LAW FIRM


                                        By:   <u>/s/-Jordan Schnitzer</u>
                                              JORDAN SCHNITZER
                                              Attorneys for Defendant



PHILIP BOUCHARD

**IT IS SO ORDERED.**

Date: ___9/1/2021___

_____
HON. KENT J. DAWSON
United States District Court Judge



**JOINT PRETRIAL ORDER**